So, where was I? United States v. Vaughn. Yes, sir. Good afternoon, Your Honor. Frederick Goldreich, Assistant Federal Public Defender in the Middle District of Pennsylvania. I represent the appellant, Gary E. Vaughn. I'd like to reserve two minutes of my time for rebuttal. Yes, go ahead. Addressing at the outset the court's question in the letter that was directed to counsel, which is whether the statement on page 5 of our brief, which reflects the indication of plea counsel in assessing Mr. Vaughn's sentencing exposure, calculated the guidelines to be 57 to 71 months and 97 to, or 78 to 97 months. Yes, indeed, it is inconsistent with Mr. Vaughn's affidavit. Mr. Vaughn says the very first time he heard anything about a guideline calculation was when he was in court at his guilty plea. But in this case, the district court credited the affidavit of plea counsel, specifically in the opinion saying that plea counsel's affidavit affirms that Mr. Vaughn was advised of a sentencing exposure. Your position is there's a conflict between the affidavits and therefore this factual issue needs to be resolved at a hearing, correct? Correct. Can you, though, state why you, it seems that on page 5 you say you credit the opposing affidavit or you just, was that a misstatement or what? It wasn't a misstatement. I mean, I was just simply reiterating the facts as found by the district court. I thought, frankly, in our factual setup we were required to do that. If I had reiterated the facts that Mr. Vaughn had asserted in his petition, I think the government might have some concern about that and I might be down here answering a different set of questions from the court. But be that as it may, as Your Honor pointed out, the bottom line here is there was a conflict factually throughout the pleadings regarding what transpired between counsel and plea counsel and Mr. Vaughn. Well, let's take a look at Vaughn's affidavit and compare it to the e-mails because his affidavit suggests that there was no discussion about the sentencing guideline range and the first time he heard about it was at the plea proceeding itself. And there is an e-mail of May 16th where he talks about the fact that there had been a discussion about a range that's recited as being 48 to 72 months and then he gets to the plea and he hears the 57 to 71-month range, et cetera. So doesn't his more contemporaneous e-mails undermine his affidavit? Well, there is some tension between them. I don't know if it undermines it because those e-mails, there's two of them, May 16th and I believe May 21st where they both discuss guideline calculations, but they were in advance of the pre-sentence report. So now he's already pled. But the point is that he says in his affidavit that the first time he heard about sentencing guideline ranges was literally at that plea. And, in fact, his own e-mails are saying something quite different, in fact contradictory. But the plea had occurred by then. The plea had occurred but he hadn't been sentenced. I understand that. But my point is that in reading the content of the e-mails, the e-mails suggest that before he even took the plea he was told about this 48 to 72-month range and thereafter at the plea proceeding he hears this different range. And so I'm just asking you, do you read those e-mails that way? Which seems to me to be a statement by him in May of 2012 saying I was told about the range,  I would certainly concede that there's some tension between what he's saying in his affidavit and his pleadings and what's attached to it. Actually, I'm surprised you would concede that. I thought that what you would say is at the time that his attorney says he learned of the 60 months, he says I didn't learn anything about the guidelines. And then there's a period of time when he's informed that there's going to be no recommendation and that this reference that Judge Schwartz has just took you through, which precedes the plea, is a reference in time temporarily to that period where there was no recommendation. And that the period in time when the 60-month deal was on the table, therefore, is undisturbed. There's nothing in the record that says that he was aware of what the guidelines were at that time. That's true. You could read it that way, too. And that's why you needed to hear it. We can't really flesh out what exactly happened because Judge Schwartz and I might differ on what this e-mail means, but until we have a hearing and we can actually get Mr. Vaughn on the stand and get counsel on the stand and ask him those questions, we simply don't know. He could be talking temporarily about one period of time or temporarily about another period of time. So the bottom line is that it all highlights exactly what the problem in the case is, is that he filed something, a 2255 motion, a brief, an affidavit, attached e-mails, which is quite a bit more than what most individuals do in this circumstance. And those filings were diametrically opposed in some instances to what counsel said, particularly with regard to whether he advised him of potential sentencing exposure, particularly with whether he advised him of the pros and cons of this 16-month binding plea. And there are other instances in the e-mails that also highlight some discrepancies with what counsel's saying in his affidavit. Let me ask you this question. In the record, it appears that his prior attorney, Justice Rice, advised him that the government had a 16-month deal on the table. I think Mr. Rice says at the end of his affidavit that he has no recollection of receiving a binding 16-month deal, but he does talk generally about what he typically did in preparing a case. I'm so sorry. I thought there was a reference, I could be wrong, in the affidavit to Rice. He says he has no recollection of actually receiving a firm offer on that. I believe that's the last thing he says in his affidavit, but I think it's on the second page. No, I mean Mr. Vaughn. Oh, Mr. Vaughn's affidavit? In the first paragraph, he says presented a plea offer from the government of 16 months. It's in conflict with Mr. Vaughn's affidavit, but yes. Rice says he doesn't remember, and Vaughn says there was one. Okay. My point was this. Given the fact that Vaughn has that recollection of having received a 16-month offer at whatever period of time he doesn't mention in the affidavit when it was, but in his view there's a period of time when he received a 16-month view as related through Mr. Rice, and then there's a period of time when he gets a 16-month offer from Mr. Slusis, and then there's a no recommendation. Is there anything to be intuited or inferred from the fact that, at least according to Mr. Vaughn's recollection, he's had this sort of 16-month offer, if you will, on his mind for some period of time? Well, there could be. I mean, we'd have to flesh it out at a hearing, but it may be that nobody provided him with a pro and con or benefit or non-benefit to taking the plea agreement in satisfactory form. I'd like to go back, though, to the email. There's an email on May 21st where he says he rejected the 16-month plea because he, quote, thought of himself not guilty. That's correct. Mr. Vaughn wanted to go to trial. Right. And that sort of segues into sort of Lafler. So put aside whether or not there was deficient advice and turn to the Lafler factors. How does this record support the Lafler factors to show prejudice? Because in the first prong where he's got to show he was going to accept the plea, your brief says we should infer he would because he accepted one without the cap. But his own email says, I did not accept that plea because I thought of myself not guilty. So I don't know how the record could potentially support prejudice on that prong. And on the second prong, there's nothing in the record that demonstrates the district court would have accepted the 16-month plea and, in fact, I think one could infer it would not have in light of how it chose to vary. So if we put aside the deficiency point for the moment about whether there was adequate information, tell me how this record supports the Lafler factors to show prejudice. Well, in terms of what the court would have done, I don't know how a defendant in Mr. Vaughn's situation can divine what the court may or may not have done with a plea in this particular circumstance. I think you actually have to have a hearing. Now, as Mr. Caraballo and I discussed in the hall before the oral argument today, I mean, the judge could have simply disposed of this the way he suggests. He could have just said, I wouldn't have accepted this. I might have gone below the guidelines, but I sure as heck wasn't going to go all the way down to 60 months.  Yes, the court could have simply done that. We wouldn't be here having this discussion, but they didn't. How do you get around prong one, though? Because nothing in his affidavit said he would have taken that plea. Your brief infers he would have on your argument, and his own statement from May of 2012 indicates he wasn't taking it because he wasn't seeing himself as guilty. So where in the record do we have any evidence to support Lafler's first factor? Well, I think he says in at least a couple of those emails, well, why did I turn down a 60-month offer and proceed in this fashion when I'm now facing 135 months? I mean, that's what I'm getting out from his emails, and it's pretty clear to me that he's complaining about the fact that he was subjected to a much higher guideline range on the back end of this thing than he would have been otherwise. And so at the end of the day, what happened here is the district court simply credited plea counsel's affidavit. You can do that if it's in a situation where somebody's complaining they weren't advised of an extradition, and the colloquy satisfies it, and counsel says, I told them, and then you can summarily dismiss the thing. But this is a little bit more complicated just because of all the factual disputes, and we're having a discussion about conflicts within Mr. Vaughan's filings. And we don't know why he ultimately did plead guilty when he thought he was innocent, perhaps because counsel said if you put this parade of horribles in front of the judge, he's going to give you a higher sentence, and here's your chance to get a lower sentence by pleading guilty. So it might actually work to his benefit with respect to his lack of information at the time of the 60-month deal. It may have. But we don't know. This court hasn't exactly had this paradigm in front of it, at least in terms of a public decision, where a judge credited one affidavit over another, but the Seventh Circuit's done it in Castillo v. United States and said basically affidavits serve a useful purpose. If you're not sure what facts are in dispute, you get them, and then you know what's in dispute, and then when you have a hearing, you don't have to go all over the ballpark about different things that may not be important, but you simply can't pick one affidavit or the other and make a credibility assessment. I could be flip and imagining Judge Jones, whom I know, having had it with Gary's steals and deals, may have credited the affidavit of the lawyer a little bit better than Gary's, but shouldn't have. Well, certainly the name of this company didn't help his credibility. Is there any circumstance when dueling affidavits, as we have here, would allow the district court to make a call one way or the other? I think the one I just outlined, if someone's complaining, I wasn't advised of some collateral consequence, but it was part of the colloquy, and the lawyer says, yeah, not only was he advised of it at the time of his plea, but I told him about it, too, I think he could resolve the case pretty quickly that way. Well, that would be frivolous, so a hearing's not necessary. Exactly. But otherwise, I think it makes it – the rule suggests you should have a hearing. The court's case law is pretty clear on this, and it's spoken multiple times that the way to sort these things out is to have a hearing as opposed to – and the colloquy in this case really doesn't answer a lot of the court's questions that have just been posed, and neither does the Shedrick decision. And for these reasons, we'd suggest the court simply remand for a hearing. Thank you. Did you reserve rebuttal time? Yeah, he did. Two minutes. Good afternoon, Your Honors, and may it please the court. My name is Phil Caraballo, and I'm here on behalf of the United States. I'm from the United States Attorney's Office for the Middle District of Pennsylvania. Your Honors, the district court did not abuse its discretion when it denied Mr. Vaughn's 2255 motion without an evidentiary hearing. Tell us about this period of time that we've been discussing with your adversary that there seems to be a tension between, and that is when you look at the plea colloquy, Judge Schwartz asked your adversary about what inferences you can draw from the plea colloquy. So you look at the plea colloquy, and Mr. Vaughn obviously admits that there was a discussion of guidelines, but there's no temporal identification for when that was done. You know that you have two periods of time here because there were two separate offers. On the one hand, a 60-month offer, and on the other hand, a no recommendation offer that would go to the court without a specific period of time. What is it or what is there in the record from which we could infer that that reference to being told about the guidelines really refers to the period in time when he was informed of the 60-month offer? Your Honor, there's nothing directly in the record. I think what the record shows is that there's certainly no doubt that during the course of plea negotiations, Mr. Vaughn had several opportunities to discuss guidelines issues with his attorneys. In the first instance, he acknowledged in his own affidavit and in the e-mails that Judge Schwartz referenced that there were discussions in advance of his plea hearing while we were going through plea negotiations with his attorneys about his estimated guidelines. But that's the plea that he ultimately accepted. That's the later plea. Well, we're not entirely certain, Your Honor, because his affidavit, I think, and his e-mails. The point is we're not entirely certain. Isn't that the point? And for the judge, for the district court judge to have credited one affidavit versus his affidavit that said categorically, I wasn't told, how can that be? Your Honor, it's more than that because it's not just a matter of dueling affidavits. This is a matter of the district court viewing Mr. Vaughn's affidavits, viewing the two affidavits submitted by his prior counsel, and also viewing them in the context of the record. And our view is that the affidavits coupled with the sentencing proceedings, the guilty plea colloquy, that these are factors that bolster the judge's discretionary decision to avoid an evidentiary hearing. How do you get to the point? Sorry, go ahead. Just help me, and then, you know, everybody else has their opportunity to get help. Here's the help. Tell me what is it in the record that infers that when he was told about the guidelines and admits at the plea colloquy that he was told about the guidelines, that that refers to a point in time when the 60-month offer was on the table? That's the point because if there's nothing in the record that specifically refers back to that point in time, then you have literally dueling affidavits because then the issue becomes what is it that he knew or did not know at the time that that offer was on the table? And I think the only thing in the record, Your Honors, are the two affidavits by his former counsel that specifically state at the time he received the prior to 60-month binding plea agreements that they had discussed the guidelines issues then with him and given him estimates. And his affidavit said that didn't happen. So we're back to dueling affidavits, are we not? Correct. But during the guilty plea colloquy, when his attorney proceeded to give an estimated guidelines range on the record, at no point did Mr. Vaughn jump up and say, wait a minute, you didn't tell me that when I received those two 60-month offers. It wasn't relevant. It wasn't the 60-month thing was history. It wasn't relevant. All that was relevant then was that time context when he ultimately did plead guilty, which everybody knows he knew what the guidelines were then. We know that. That's not the issue. Should he have piped up and said, well, Your Honor, it is true that he told me in connection with this plea, but I have to tell you, back when there was a 60-month binding on the table, he didn't tell me then. The judge would have said, that's not relevant. We're not there. We're here. Isn't that what would have happened if he said anything about that? Well, Your Honor, I think what's striking is that when you look at his affidavit, he states that he was, I think his word was flabbergasted to hear his attorney reciting this guidelines estimate for the first time, according to him, at the guilty plea colloquy. But the transcript doesn't reflect that. You would assume that someone who is flabbergasted about their attorney saying things they've never heard before would jump in and pipe up. Yeah, but that makes perfect sense, right, if the only point in time that we were referring back to was the point in time when there was a no-recommendation offer on the table, but we're not, right? If his only claim, just put aside the 60-month offer for a moment, right? So the only thing is a no-recommendation offer, right? So he comes in now after having pled and says, I was never told. Well, you, right, as the government, have the record to refute that, right, because it's clear that, you know, at that period in time, he was told. The question is, how do we then take the leap to go back in time? I mean, you know, everybody up there knows how it goes, you know. At various points in time, there are various offers on the table. They get withdrawn for whatever reasons that aren't important. The whole point here is that at the point in time that the 60-month was on the table, there was a deficiency in counsel's communication. The no-recommendation period of time is not relevant. So that's the problem. We can't project back, or I'm having difficulty, and maybe you can help me in projecting back in time this information with regard to the guidelines further back than during that period of time when there was no recommendation. I understand the disconnect, Your Honor, and I think that certainly it's unclear. There's an uncertainty as to what time period he's being referred to. If there's an uncertainty, then why don't you just say, let's have a hearing? Well, because at that point, Your Honor, the district court is still within its discretion, given the entire record, to make a credibility determination on the basis of these affidavits. Really? How so? I think so, Your Honor. The advisory rules to 2255 and 2254, which are incorporated by reference, they specifically envision that the purpose of giving the district court the ability to expand the record, including by accepting affidavits, is for the very purpose of avoiding the time and expense of conducting an evidentiary hearing if there's sufficient material in front of it in the affidavits and in the rest of the record so that it can make a judgment call. And I think it's important here, Your Honor, something that Judge Rundell said earlier, he keeps saying the district court, but more specifically, Judge Jones. He shepherded this matter from its onset since it was first indicted to the point where it became under this court's jurisdiction. Judge Jones had an intimate familiarity with the record and with this defendant, and I think that a review of the sentencing transcript is illustrative because he repeatedly refers to Mr. Vaughn as a con man who is willing to say anything that he can at any time if it suits his advantage. And that's a theme that continues through the district court's opinion below. If we allow the district court to make those kind of calls on dueling affidavits, the defendant would never ever have a hearing. Let me ask you this, Counselor. If you're in your position that Paragraph 11 of his affidavit, which he makes that flabbergasted comment, do you understand that to mean that Vaughn is saying, I have never been given a guideline calculation at all during the course of the representation? Is that what your understanding is? Absolutely, Your Honor. And if that's your understanding, is it then your position that the record before the district court was sufficient for the district court to say, you know, I can reject this affidavit because it's inconsistent and contradicted by the more contemporaneous emails that talk about the fact, in fact, he heard about plea guidelines, regardless of whether it was at when the 16-month plea was negotiated or discussed or more presently because it undermines his claim that I never heard about anything about guidelines until I walked into court to enter my plea. Is that your position, and is that why we should conclude that the district court didn't abuse its discretion because we have a flat denial undermined by both testimony under oath saying I talked about the guidelines and contemporaneous emails? I think that's right, Your Honor, and it's undermined by the emails where he repeatedly references prior discussions of the guidelines he had with his counsel during the course of plea negotiations and also repeatedly comes straight out and says, I rejected those pleas of my own volition and that counsel in no way had anything to do with it. And that takes it out of the ambit of Frye and Lapler, in our opinion. Isn't it clear that the district court really was misconstruing what happened here? The district court's talking about this as being a Shedrick situation that the plea colloquy really satisfied everything. He heard the plea colloquy, so that's fine. That totally misses the point of what happened here. I agree to an extent, Your Honor. Yeah, so if the district court really didn't focus on exactly what the problem was, then how can we say that it was, you know, kind of dealing with it, you know, all the cards on the table? It just seems to me that district court was misapprehending. Certainly during the plea colloquy and under the Shedrick and its progeny, that was when what was before the court was his ultimate plea, not these 60-month deals. So I understand the disconnect, but I think the point is that the statements he made under oath during that plea colloquy nonetheless are one of the factors that the district court took into consideration when it made its discretionary denial of an evidentiary hearing. Right, but if there's no basis for the court to make a temporal judgment as to when the conversation about the guidelines occurred, how can we say that it wasn't an abuse of discretion? What is the district court basing the decision that he must have been told during that period of time when the 60-month deal was on the table? How do we get there? I don't think that the district court's opinion was that granular in that respect. I think it was more a general finding of a lack of credibility in Mr. Vaughn's affidavit. One of the things I found striking in the sentencing hearing was when the district court pinpointed the letter that Mr. Vaughn had filed for his sentencing and exhoriated him for it, finding that he was minimizing his responsibility, that he wasn't accepting full responsibility for his actions, and that the district court may very well have found him to have continued that approach in filing this self-serving affidavit. If I could ask you about Lafler, the district court doesn't mention it at all, and it is the key prejudice prism. That's the case that talks about prejudice in a context like this. Is that a reason we should send it back, or is there sufficient evidence in this record that would satisfy the Lafler factors or not, as the case may be? Well, Your Honor, and you mentioned this before, and I think this is an important point because we are by no means conceding that Mr. Vaughn has established prejudice here under Lafler. The district court didn't really address this in its opinion, and we did note it in our brief, but the bottom line is we right now have no way to ascertain whether the district court would have even accepted a 60-month binding plea under Rule 11C1C, and indeed the fact that it had the ability, that Judge Jones had the ability to depart down to 60 months but clearly decided not to do so may very well mean that those extra 12 months were important to the district court. So do we have to send it back for that reason, because we don't have the prejudice analysis, or is it your view that the district court's analysis was, by its terms, discrediting allegations of deficient performance and therefore never had it reach Lafler? Well, I wouldn't say that it needs to be sent back for the purposes of an evidentiary hearing. I don't think that the district court needs an evidentiary hearing to decide itself whether it would have accepted Mr. Vaughn's 60-month binding plea. Is there anything in the record that would say that Mr. Vaughn would have accepted that plea? The only thing I saw was his own statement saying he rejected it because he didn't think he was doing it. Right, and in all candor, I will say, based on my review of the record, there are many instances where it seems he was more likely to go to trial than accept the plea. But in all candor, I did find in his pro se Second Amendment 2255 brief a somewhat lukewarm statement where he says something to the effect of there is reason to believe that he would have accepted the plea in hindsight had he been advised of the full, accurate guideline range he was facing at trial at the time of the 60-month plea. Thank you. And, Your Honor, I think that actually One other question. The affidavit also says that before going into the change of plea hearing, counsel says to Mr. Vaughn, listen, he's going to ask you every which way Sunday, all these questions, you know, you might be confused, whatever, just say yes to everything. Should that not give us some pause? Because the district court says, well, gee, you know, he didn't speak up when I asked about his legal representation, so he must have been really happy with his lawyer. We have a statement to the effect that, you know, he was told to just be quiet and say yes. Your Honor, that certainly is not the first time a 2255 appellant has made that claim, that their attorney told them to stay mum during the course of the hearing. I would respectfully point the court to the case U.S. v. Jones, which we may not have cited in our brief. It's at 336 F. 3rd, 245. Because I think that case is a fantastic discussion of why, given the solemnity of a guilty plea proceeding, the fact that the defendant is testifying under oath needs to be given greater weight than a self-serving affidavit. After all, if we were to buy into his view of what he said at the guilty plea colloquy being influenced by his attorney, it necessarily means that he was lying under oath, and that's yet another factor weighing against his credibility that the district court may very well have considered. Your Honors, I see my time is up. Thank you. Yes, Your Honor. Red is just a suggestion. So let me ask you this question. One of the arguments is that the ultimate determination of the guideline was 135 months. The guideline range was 97 months. One of the disconnects in the case seems to be what degree or amount of dispertance is necessary before we can determine that a guideline calculation from counsel is deficient. Do you have any thoughts on that? Yes, Your Honor. And that's why our initial position is that Mr. Vaughn's petition fails as a matter of law because what he's asking for is effectively a new rule of plea-guarding law, whereby his counsel should have given him an accurate estimation of the guidelines he faced at trial at the time he received his 60-month plea deals. As the court said in U.S. v. Day, and I think it was echoed in U.S. Mustafa, that's really not the standard. The Day case was clear that there really is no precise standard that a defense counsel needs to meet when advising clients about plea agreements and about their sentencing exposure, but that they do need to be somewhat familiar with the structure and the contents of the guidelines, if not going to the point where they have to provide a detailed explanation of their myriad nuances. So why is he, in fact, incredibly close here? Because he articulated a guideline range of 57 months and then the other, the 90s. And the only difference between what he predicted and what was in the sentencing guideline range itself was really just a matter of one criminal history category. Correct, Your Honor. And it's very possible that at that preliminary stage in the representation, he could have missed a single enhancement or misinterpreted his client's extensive criminal history category, leading to guidelines estimation that was close but off by a few levels. And our position is that under the court's precedent in Day and Mustafa, that was enough. But that's not what we have here. We have the contention in the affidavit that he wasn't told at all. And that qualifies as ineffective assistance. Your Honor, we actually read his contention to be more that he wasn't told the maximum guidelines exposure he faced at sentencing, not so much that he was never told whatsoever what he was facing. And I would cross-reference, Your Honor, his brief that he filed with his affidavit. If you look at Appendix 212, it specifically cites the paragraphs in his affidavit where he makes these allegations. And it's in the context of him not receiving a maximum estimated guidelines calculation should he proceed to trial, not under the ease of I didn't receive any guidelines advice. Thank you, Your Honors. Just briefly on the dueling affidavit thing, even though this Court hasn't specifically addressed it, other circuits have, and the rules and the statute do not seem to suggest that that's an appropriate way to resolve these things with dueling affidavits. There may be individual circumstances where an affidavit clarifies the record to a degree that a court could make that decision, but certainly not where there's this kind of a factual dispute. So are you asking us to adopt a rule that says if there are dueling affidavits, the court must have a hearing unless there is, I think it is in the language of the Supreme Court, sort of conclusive evidence in the record that satisfies the dispute? I don't think you need to adopt a rule. I just would suggest that it's an unlikely scenario where conflicting affidavits would resolve the issue to a degree that the court can avoid a hearing. And secondarily, to Judge Greenaway's point, there is a pretty significant difference here between Mr. The plea counsel's guideline calculation and what ultimately was presented to Mr. Vaughn at the probation department. I thought your point would be rather whether it's significant or not is irrelevant. It's just it's irrelevant because it's not the period in time we're talking about here. That's correct as well. On that note, I'll sit down. Okay. All right. Thank you, counsel, for a well-argued case. And we will take this matter under advisement.